UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANTS*
666 Third Avenue
New York, New York 10017
(212) 545-4000

    ATTORNEYS OF RECORD:
        FELICE B. EKELMAN, ESQ.
        NOEL P. TRIPP, ESQ.

------------------------------------------------------------------x

KARLY ESPINAL, GREGORIO VASQUEZ, JESUCRISTO
SANTOS LUNA, YAN CARLOS MENA, NELSON DIAZ,
ENGLES RODRIGUEZ, EDDY NUNEZ, MIGUEL
AGRAMONTE-BAEZ, CORPUS PEREZ, SANTOS ROJAS-
FRIAS, and JUAN N. NUNEZ, on behalf of themselves and
others similarly situated,

                                    Plaintiffs,      Civ. No.: 12-CV-5313

              -against-                        Swain, J.

SHINOBI NY LLC d/b/a/ NINJA NEW YORK, HARUO
YAZAKI, and JOHN DOES 1-10,

                                    Defendants.

------------------------------------------------------------------x

TO:    C.K. LEE, ESQ.
        LEE LITIGATION GROUP, PLLC
        *ATTORNEYS FOR PLAINTIFFS EDDY NUNEZ*
        *And SANTOS ROJAS-FRIAS*
        30 East 39th Street, Second Floor
        New York, NY 10016

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE
SETTLEMENT AGREEMENT ENTERED INTO WITH PLAINTIFFS EDDY NUNEZ
AND SANTOS-ROJAS-FRIAS</u>**

## Table of Contents

    **Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

RELEVANT BACKGROUND .............................................................................................. 1

LEGAL STANDARD ............................................................................................................ 3

ARGUMENT ......................................................................................................................... 4

I.    PLAINTIFFS' COUNSEL HAD ACTUAL AND APPARENT AUTHORITY TO BIND PLAINTIFFS ............................................................. 4

II.    THE SETTLEMENT IS A BINDING AGREEMENT UNDER *WINSTON* ............ 6

    A.    There Was No Express Reservation of Right Not to Be Bound .......................... 6

    B.    To the Extent Partial Performance Applies To The Agreement In Question, Partial Performance Took Place .......................................................... 7

    C.    All of the Terms of the Agreement Were Agreed Upon ...................................... 7

    D.    Settlement Agreements Do Not Have to be in Writing to be Enforced ............... 8

CONCLUSION ...................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alvarez v. City of N.Y.*,
  146 F. Supp. 2d 327 (S.D.N.Y. 2001)..................................................................................6

*Delyanis v. Dyna-Empire, Inc.*,
  465 F. Supp. 2d 170 (E.D.N.Y. 2006) ..................................................................................6

*Fennell v. TLB Kent Co.*,
  865 F.2d 498 (2d Cir. 1989)..................................................................................................5

*Figueroa v. City of New York*,
  2011 U.S. Dist. LEXIS 9433 (S.D.N.Y. Jan. 31, 2011)................................................5, 6, 7

*Francis v. HBO, Inc.*,
  2005 U.S. Dist. LEXIS 7723 (S.D.N.Y. Apr. 28, 2005)...................................................3, 8

*Garibaldi v. Anixter, Inc.*,
  533 F. Supp. 2d 308 (W.D.N.Y. 2008) .................................................................................4

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*,
  2005 U.S. Dist. LEXIS 11130 (S.D.N.Y. June 9, 2005).......................................................8

*Ji Hyun Lee v. Hosp. for Special Surgery*,
  2009 U.S. Dist. LEXIS 70350 (S.D.N.Y. Aug. 10, 2009).....................................................7

*Lopez v. City of N.Y.*,
  242 F. Supp. 2d 392 (S.D.N.Y. 2003)...................................................................................6

*Min v. Target Stores*,
  553 F. Supp. 2d 218 (E.D.N.Y. 2008)...................................................................................4

*Mone v. Park East Sports Medicine and Rehabilitiation, P.C.*,
  2001 U.S. Dist. LEXIS 19445 (S.D.N.Y. Nov. 29, 2001)..................................................6, 7

*Pereira v. Sonia Holdings (In re Artha Mgmt.)*,
  91 F.3d 326 (2d Cir. N.Y. 1996)............................................................................................5

*Powell v. Omnicom*,
  497 F.3d 124 (2d Cir. N.Y. 2007).....................................................................................4, 7

*Preston, et al. v. FT 17 LLC et al.*,
  S.D.N.Y., No. 11-CV-2556, 02/11/13 ..................................................................................8

*Vacold LLC v. Cerami*,
  545 F.3d 114 (2d Cir. 2008) ..........................................................................................3, 4

*Walker v. City of New York*,
  2006 U.S. Dist. LEXIS 34345 (E.D.N.Y. Apr. 4, 2006) ...............................................3, 4, 5

*Wesley v. Correction Officer Badge # 9417*,
  2008 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 2, 2008) ................................................................4

*Winston v. Mediafare Entertainment Corp.*,
  777 F.2d 78 (2d Cir. 1986) ....................................................................................3, 6, 7, 8

**STATUTES**

29 USC § 216(b) .............................................................................................................................1

FRE 408 ..........................................................................................................................................1

## PRELIMINARY STATEMENT

Defendants Shinobi NY LLC and Haruo Yazaki ("Defendants") submit this Memorandum of Law in Support of their Motion to Enforce ("Motion") their settlement with Plaintiffs Eddy Nunez and Santos Rojas-Frias ("Plaintiffs").

Resolution of Defendants' Motion turns on the answer to a simple question: when, in the settlement negotiation process, is an agreed-to settlement binding in federal court? The answer is: where the intent of the parties as analyzed through their words and deeds is clear. In the instant matter, Plaintiffs' intent to enter into a binding agreement is clear, and the Court should enforce the agreement reached in this matter.

## RELEVANT BACKGROUND

The facts of this matter are straightforward and have been set out in prior submissions to the Court. Eleven Plaintiffs commenced a putative class and collective action lawsuit under the Fair Labor Standards Act ("FLSA") and NY Labor Law ("NYLL", together with the FLSA the "Wage Laws") on or about July 9, 2012. Ex. A ("Compl.").[1] They alleged having worked at the lower Manhattan restaurant operated by Defendant Shinobi ("Ninja") as hourly, non-exempt kitchen workers, and not received premium overtime in violation of the Wage Laws. *Id.* ¶¶ 32-147. On November 16, 2012, a twelfth plaintiff filed a Consent to Join this action under the FLSA, 29 USC § 216(b). Plaintiffs were, at all relevant times, represented by Justin Cilenti of the law firm of Cilenti & Cooper. Compl. ¶ 164 ("Plaintiffs . . . have retained counsel experienced in employment law and class action litigation").

---

[1] Exhibits are attached to the Affirmation of Noel P. Tripp in Support of Defendant's Motion to Enforce ("Tripp Aff.") and are referenced herein as "Ex. ___." To avoid issues pertaining to privilege and FRE 408, the relevant contents of specific documents – particularly email communications between counsel and draft settlement agreements – are excerpted in the Tripp Affirmation. Defendants shall provide complete copies of these documents for the Court's *in camera* review upon request.

On August 17, 2012, Mr. Cilenti made an initial settlement demand to "resolve all claims." Tripp Aff. ¶ 6. The email conveying this demand expressly stated that counsel had "conferred with my clients and they authorized me to make a settlement demand." *Id.* Thereafter, the parties engaged in protracted negotiations, including the production of hours worked and payroll records to Plaintiffs' counsel. *Id.* ¶¶ 7-8. In December 2012, following production of Ninja's records pertaining to Plaintiffs' employment, settlement negotiations continued in earnest. *Id.* ¶¶ 9-11. The parties exchanged offers and counteroffers based on their respective analyses of the time and payroll records at issue. *Id.* At all times, Mr. Cilenti acted with apparent authority to resolve Plaintiffs' claims. *Id.* ¶¶ 6,9,11. Indeed, he represented that he had Plaintiffs' authority to settle at each juncture. *Id.*

On February 14, 2013, the parties reached agreement, culminating months of negotiations. *Id.* ¶¶ 11-12. Throughout, these negotiations concerned only the key terms: namely, the amount of money Defendants would pay in exchange for a general release. *Id.* ¶¶ 6; 12. This agreement was reached immediately prior to a scheduled settlement conference before Magistrate Netburn. Dkt. 32. Following the agreement, Mr. Cilenti submitted a letter to the Court indicating that the parties had reached "a settlement in principle" and requesting additional time so that the "settlement *documents* [could be] finalized." Ex. B.

After the agreement was reached, a draft settlement agreement was prepared by Defendants and conveyed to Mr. Cilenti on February 22, 2013. Tripp Aff. ¶ 14. The draft written agreement did not modify the essential terms of the original agreement, namely payment of a sum certain in exchange for Plaintiffs' release of claims. *Id.* Following discussion and minor modification of the proposed written agreement (which modifications did not modify the essential, already-agreed terms), on March 14, 2013 defense counsel sent a second draft version

2

to Mr. Cilenti. *Id.* Mr. Cilenti responded the next day, March 15, 2013, with an email stating "I accept the changes. I will have the clients come in next week to sign." *Id.* On March 28, 2013, Mr. Cilenti emailed to indicate that Plaintiffs did not wish to sign the agreement. *Id.*

On April 4, 2013, Plaintiffs' new counsel, Mr. C.K. Lee, sent a letter to the Court indicating that Plaintiffs terminated Mr. Cilenti's services on April 1, 2013, and that they were "not . . . satisfied with their representation by Cilenti & Cooper nor the proposed settlement." Ex. C. This Motion follows.

## LEGAL STANDARD

The analysis of whether the agreement reached between counsel is binding under federal law is two-pronged. First, the Court must determine whether Mr. Cilenti, Plaintiffs' agent, had actual or apparent authority to bind Plaintiffs to the settlement. *Walker v. City of New York*, 2006 U.S. Dist. LEXIS 34345, 7-9 (E.D.N.Y. Apr. 4, 2006).[2]

Once Mr. Cilenti's authority is confirmed, the Court proceeds to determine whether the parties entered into a binding agreement under the factors set forth in *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78 (2d Cir. 1986); *Francis v. HBO, Inc.*, 2005 U.S. Dist. LEXIS 7723 (S.D.N.Y. Apr. 28, 2005). Under *Winston*, Courts examine "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Id.* at 80. Evaluating these factors, however, is not a "talismanic

---

[2] At no time, neither pro se nor through new counsel, have Plaintiffs contested Mr. Cilenti's authority to negotiate on their behalf, and any subsequent challenge to that authority in response to the instant Motion would ring exceedingly hollow. No such basis could exist. In an abundance of caution Defendants set out briefly the basis for the authority to negotiate, as perceived by Defendants through counsel. Should Plaintiffs make such a belated attempt, Defendants request an evidentiary hearing to test Plaintiffs' factual assertions in this regard.

3

scorecard." *Vacold LLC v. Cerami*, 545 F.3d 114, 125 (2d Cir. 2008). "The ultimate issue, as always, is the intent of the parties: whether the parties intended to be bound, and if so, to what extent." *Id.* Further, "the intention to commit an agreement to writing, standing alone, will not prevent contract formation . . . [and] the settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. N.Y. 2007).

Settlement agreements to end litigation are strongly favored by the courts and should not be lightly cast aside. *Min v. Target Stores,* 553 F. Supp. 2d 218 (E.D.N.Y. 2008). "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences were incorrect or because he had a change of mind." *Wesley v. Correction Officer Badge # 9417*, 2008 U.S. Dist. LEXIS 2, at *6 (S.D.N.Y. Jan. 2, 2008). Indeed, a "'preliminary' oral agreement, entered into in anticipation of a later writing memorializing its terms, is no less binding than a written agreement, so long as the parties have not expressly reserved the right not be bound in the absence of a writing." *Garibaldi v. Anixter, Inc.,* 533 F. Supp. 2d 308, 310 (W.D.N.Y. 2008).

## ARGUMENT

### I. PLAINTIFFS' COUNSEL HAD ACTUAL AND APPARENT AUTHORITY TO BIND PLAINTIFFS

As the adversarial party, Defendants are not obligated to demonstrate that Mr. Cilenti had authority to bind Plaintiffs, his clients. *Walker,* 2006 U.S. Dist. LEXIS 34345, at *8. The burden rests with Plaintiffs "to demonstrate that [counsel] lacked the authority to settle the case." *Id. citing Gilbert v. United States,* 479 F.2d 1267, 1268-69 (2d Cir. 1973). Furthermore, "if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt

4

that authority, the settlement will be upheld." *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989). This is in part due to the presumption "that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so." *Pereira v. Sonia Holdings (In re Artha Mgmt.)*, 91 F.3d 326, 329 (2d Cir. N.Y. 1996). Thus, the burden is on Plaintiffs to affirmatively establish the absence of such authority. *Id.* at 329-30. Here, as in *Walker*, *supra*, Mr. Cilenti had both apparent and actual authority.

As concerns actual authority, as of this submission Plaintiffs do not "dispute that [they] authorized [counsel] to settle the suit on her behalf . . . Nor . . . defendants' contention that [counsel] and the defendants thereafter entered into an oral settlement agreement." *Figueroa v. City of New York*, 2011 U.S. Dist. LEXIS 9433 (S.D.N.Y. Jan. 31, 2011)(enforcing oral settlement in civil rights action where Plaintiff refused to sign fully negotiated settlement agreement). No basis to dispute actual authority exists.

Even if Plaintiffs were to belatedly contest Mr. Cilenti's actual authority (as they have not done to date), his apparent authority would remain clear. He "prepared, signed and filed the Complaint with this Court . . . and [appeared] at all conferences before this Court" through the date of the settlement. *Walker*, 2006 U.S. Dist. LEXIS 34345, at *14. He "signed all correspondence to defendants and to this Court." *Id.* Most importantly, he negotiated the settlement ultimately reached over a period of six months, through communications with counsel for the adverse party in which he represented his authority to resolve the matter. *Figueroa*, 2011 U.S. Dist LEXIS 9433, at *5 (discussing negotiations between counsel giving rise to enforceable settlement). Defendants "were both subjectively and objectively reasonable in their reliance on [counsel's] representation that he had authorization to settle the matter." *Walker*, 2006 U.S. Dist. LEXIS 34345, at *15.

5

## II.   THE SETTLEMENT IS A BINDING AGREEMENT UNDER *WINSTON*

### A.   There Was No Express Reservation of Right Not to Be Bound

There was no such reservation in the negotiation giving rise to the "settlement in principle." Tripp Aff. ¶ 12; Ex. B (requesting time only to finalize "settlement documents"); *Mone v. Park East Sports Medicine and Rehabilitation, P.C.*, 2001 U.S. Dist. LEXIS 19445, at *2-3 (S.D.N.Y. Nov. 29, 2001) (defendant's counsel did not make an express reservation not to be bound in the absence of a signed writing when he faxed a letter to chambers stating matter had been settled and formal draft of the settlement would be forwarded); *Lopez v. City of N.Y.*, 242 F. Supp. 2d 392, 393 (S.D.N.Y. 2003)(enforcing oral settlement agreement where no express reservation made on the record); *Alvarez v. City of N.Y.*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001)(enforcing oral agreement and holding that boilerplate language in agreement was not sufficient to overcome evidence that parties intended to be bound). Thus, nothing further is required to establish that, as of February 14, 2013, the parties had a valid and binding oral agreement. *Figueroa*, 2011 U.S. Dist LEXIS 9433, at *12-14; *Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006)(Plaintiff's counsel agreed to essential terms and authorized mediator to inform court that settlement had been reached).

More to the point, there would be no earthly reason for such a reservation (nor expectation thereof) in a case such as this one. Plaintiffs are kitchen workers who relied, as they must and rightly should, on their counsel to analyze their employment records under the Wage Laws, assess the claims, and negotiate a favorable resolution. Similarly, their acquiescence to the agreement was not contingent on reduction of the agreement to writing, or on specific non-monetary terms reflected in a writing. This factor favors enforcement.

### B. To the Extent Partial Performance Applies To The Agreement In Question, Partial Performance Took Place

Partial performance occurred. Plaintiffs immediately notified the court of the settlement in writing, in the absence of any written, memorializing agreement. Ex. B; *Powell*, 497 F.3d at 130 (crediting the drafting of letters as partial performance of obligations under a settlement agreement). Further, the parties abandoned discovery in contemplation of and reliance on the settlement agreement. Indeed, Defendants served written discovery requests on Plaintiffs on December 7, 2012. Tripp Aff. ¶ 8. These requests remain unanswered. *Id*. This course of conduct with respect to discovery clearly evidences the parties' agreement.

The settlement in principle was reached on February 14, 2013, with a discovery cutoff of April 15, 2013. DE 27. At no time prior to Mr. Lee's April 4, 2013 letter did Plaintiffs undertake to respond to or otherwise participate in or address discovery. Ex. C. Instead, the parties abandoned discovery and embarked on the steps necessary to reduce their binding agreement to a final integrated form. Tripp Aff. ¶¶ 12-14. This factor also favors enforcement.

### C. All of the Terms of the Agreement Were Agreed Upon

All of the terms of the Agreement – both the February 14, 2013 agreement sought to be enforced here and the subsequent written agreement – were reached. Tripp Aff. ¶¶ 12, 14. As such, this factor favors enforcement. *Mone*, 2001 U.S. Dist. LEXIS 19445, at *8 (S.D.N.Y. Nov. 29, 2001) (settlement agreement enforceable because "committed to writing in [a] complete and formal draft . . ."); *Figueroa*, 2011 U.S. Dist LEXIS at *5-6, 13; *Ji Hyun Lee v. Hosp. for Special Surgery*, 2009 U.S. Dist. LEXIS 70350 (S.D.N.Y. Aug. 10, 2009)(all *Winston* factors met and oral settlement enforced). Further, agreement on the final language of the written settlement agreement in the context of a wage dispute such as this one – as juxtaposed with the complicated

contractual arrangement contemplated by the *Winston* settlement, in which the settling Plaintiff was to receive "receive 2 percent of the gross profits obtained from exploitation" of certain fictitious characters – is not even strictly necessary for enforcement, as the key terms of the agreement are simply the settlement sum to be paid and the release to be given.  This factor favors enforcement.

### D.   Settlement Agreements Do Not Have to be in Writing to be Enforced

Because "the *Winston* test is designed to determine if a settlement agreement is binding absent a formally executed agreement, it would be a strange test if the fourth factor always favored finding no agreement on the ground that settlement agreements usually are written." *Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC*, 2005 U.S. Dist. LEXIS 11130, at *32 (S.D.N.Y. June 9, 2005).  Because of this inherent paradox, courts routinely hold that "[t]he intent to reduce a valid oral settlement agreement to writing . . . does not prevent that oral agreement from being enforced. *Francis*, 2005 U.S. Dist. LEXIS 7723 at *10.  Nothing about the complexity of the allegations and negotiation in this action militates against enforceability absent a signed writing (which writing, as noted above, was agreed upon).

Further, in many FLSA cases in this District the terms of the final settlement are simply placed on the record, with no subsequent writing.  *See, e.g., Preston, et al. v. FT 17 LLC et al.*, S.D.N.Y., No. 11-CV-2556, Minute Order 02/11/13 ("the parties and their counsel advised this Court that they reached a settlement of this [wage] matter over the weekend. Counsel for the parties described the terms of the wage and hour settlement on the record in open court").  This alternative practice highlights the relative unimportance of any final signed writing as compared to the fundamental agreement in the instant case or similar cases.  As noted above, while there is some custom of committing wage/hour settlement agreements to writing, the writing does not

8

have the same import in the context of such a dispute. The writing is simply the vehicle for a Defendant in a wage dispute to codify the terms it seeks to require (beyond the central release of claims) in exchange for the settlement payment. This factor favors enforcement.

## CONCLUSION

Orderly legal process requires that parties negotiate in good faith and be bound by their negotiations where the terms of the agreement are definitive. Here, no question exists that Plaintiffs negotiated through authorized counsel and reached agreement regarding their claims. The Court should enforce the settlement agreement as agreed to by counsel and is required by Second Circuit law. For the foregoing reasons, Defendants' Motion to Enforce Settlement Agreement Entered into with Plaintiffs Eddy Nunez and Santos Rojas-Frias should be granted in all respects.

Dated: New York, New York
June 21, 2013

Respectfully submitted,

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANTS*
666 Third Avenue, 29th Fl.
New York, New York 10017
(212) 545-4000

By: _____
FELICE B. EKELMAN, ESQ.
NOEL P. TRIPP, ESQ.

9

## CERTIFICATE OF SERVICE

   I hereby certify that on June 21, 2013, the MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT ENTERED INTO WITH PLAINTIFFS EDDY NUNEZ AND SANTOS-ROJAS-FRIAS was served in accordance with the Federal Rules of Civil Procedure, the Southern District's Local Rules, and the Southern District's Rules on Electronic Service upon the following parties and participants:

C.K. LEE, ESQ.
LEE LITIGATION GROUP, PLLC
*ATTORNEYS FOR PLAINTIFFS EDDY NUNEZ
And SANTOS ROJAS-FRIAS*
30 East 39th Street, Second Floor
New York, NY 10016

_____
NOEL P. TRIPP, ESQ.

4829-5729-6916, v. 2

10